UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x
                          :

ISADORE FISHER, on Behalf of Himself and     :
a Class of Persons Similarly Situated, and on    :
Behalf of the JP Morgan Chase 401(k)       :
Savings Plan, and JANNA M. WOOTEN, KELLI M.  :
BUNN, TAMMY T. SOILEAU and AMY K. HARVEY,  :
                          :         03 Civ. 3252 (SHS)
                          :
           Plaintiffs,         :
                          :         <u>OPINION &amp; ORDER</u>
      -against-          :
                          :
JP MORGAN CHASE & CO.,  J.P. MORGAN    :
INVESTMENT SERVICES, THE PLAN      :
INVESTMENT MANAGEMENT COMMITTEE,    :
THE BENEFITS FIDUCIARY COMMITTEE,    :
INA R. DREW, DINA DUBLON, PATRICK    :
L. EDSPARR, JOHN J. FARRELL, PETER H. KOPP,  :
MARIA ELENA LAGOMASINO, BLYTHE S. MASTER,:
EDWARD L. MCGANN, MARC J. SHAPIRO, JOHN C.  :
WILMOT, RICHARD DONALDSON JR., WILLIAM B.  :
HARRISON, HANS W. BECHERER, RILEY P.   :
BECHTEL, FRANK A BENNACK, JR., LAWRENCE A.  :
BOSSIDY, M. ANTHONY BURNS, H. LAURANCE  :
FULLER, ELLEN V. FUTTER, WILLIAM H. GRAY, III, :
WILLIAM B. HARRISON JR., HELENE L. KAPLAN,  :
LEE R. RAYMOND, JOHN R. STAFFORD, LLOYD D.  :
WARD AND JOHN DOES 1-30,       :
                          :
           Defendants.      :
--------------------------------------------------------------------x

## Table of Contents

I. BACKGROUND ................................................................................................. 3

   A.  Parties............................................................................................................ 3

   B.  The Plan ....................................................................................................... 5

   C.  This Action................................................................................................... 6

II. DISCUSSION ................................................................................................... 7

   A.  Motion for Judgment on the Pleadings Standard .............................................. 7

B.   Count I:  Defendants Allegedly Offered JP Morgan Chase Stock as an Investment Option When They Should Have Known that It Was an Imprudent Investment ................................... 8

   1.   Plaintiffs Have Failed To State a Plausible Claim that Offering JP Morgan Stock as an Investment Option Was Imprudent ................................................................. 11

   2.   The Allegations in the Complaint Do Not Establish a Plausible Claim That Overcomes the Presumption of Prudence ............................................................... 13

C.   Count II:  All Defendants, Except JP Morgan Investment Services, Allegedly Misrepresented and Failed To Disclose Material Information To Plan Participants ............... 16

   1.   Defendants Had No Affirmative Duty To Disclose Information About JP Morgan Chase's Financial Condition ................................................................... 17

   2.   Plaintiffs' Amended Complaint Fails To Allege What Statements Defendants Made That Were Materially Misleading ......................................................... 18

   3.   Defendants Were Not Acting as Fiduciaries When They Made Statements About JP Morgan Chase's Financial Condition ................................................ 20

D.   Count III:  JP Morgan Chase and the Director Defendants Allegedly Failed To Appoint Fiduciaries with the Knowledge and Experience Necessary To Manage Plan Assets ............. 21

E.   Count IV:  JP Morgan Chase and the Director Defendants Allegedly Failed To Monitor Plan Fiduciaries ................................................................................. 22

F.   Count V: JP Morgan Chase and the Director Defendants Allegedly Failed To Provide Sufficient Information For Plan Fiduciaries To Perform Their Duties .................................. 23

III.  CONCLUSION ................................................................................. 23

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, Sept. 2, 1974, 88 Stat. 829 ("ERISA").  The plaintiffs are current or former employees of JP Morgan Chase & Co., and its predecessor, Chase Manhattan Corp., (collectively, "JP Morgan Chase") who participate in or otherwise stand to benefit from a JP Morgan Chase deferred employee compensation plan, a defined contribution plan intended to qualify for tax benefits pursuant to I.R.C. § 401(k).  At least some of the plaintiffs' individual plan accounts were invested in the JP Morgan Stock Fund or a predecessor fund, which invested in the company's own common stock.  Plaintiffs allege that the decision to offer the JP Morgan Stock Fund was improper because JP Morgan Chase failed to disclose certain banking, accounting, and investment malfeasance largely connected with Enron Corporation.  The

plaintiffs claim that the defendants are liable under ERISA for the imprudent investment, negligent misrepresentations and omissions about the plan's management, and negligent supervision of the plan's fiduciaries.  Defendants have now moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons set forth below, defendants' motion is granted.

## I. BACKGROUND

The following facts are taken from the amended complaint or from documents attached to or incorporated in that complaint and are presumed to be true.  See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (a court "may consider any written instrument attached to the complaint," as well as "statements or documents incorporated into the complaint by reference," in deciding a motion to dismiss).

A. Parties

Plaintiffs Isadore Fisher, Janna M. Wooten, Kelli M. Bunn, Tammy T. Soileau and Amy K. Harvey were employees of Chase or JP Morgan Chase & Co., ("JP Morgan Chase") or a subsidiary of JP Morgan Chase during the relevant time period.  Plaintiffs invested money in the JP Morgan Chase 401(k) Savings Plan (the "Plan").  (Amended Complaint ("Am. Compl.") at ¶ 8.)  Fisher seeks to represent all "current and former participants in the Plan for whose individual accounts the Plan held shares of common stock of the Chase Manhattan Corporation ("Chase") and/or JP Morgan Chase & Co" from April 1, 1999 and January 2, 2003[1] (the "Class Period").  (Id. ¶ 1.)

---

[1] Plaintiffs did not specify an end date to the class period in their amended complaint; instead, they defined the class period from April 1, 1999 through "the present."  (Am. Compl. at ¶ 1.)  However, in their supplemental submission in support of their motion for class certification, plaintiffs proposed that the class period conclude on January 3, 2003.

Defendant JP Morgan Chase is a financial holding company and one of the largest banks in the country and is the sponsor of the Plan.  (Id. ¶¶ 9-11.)  The other defendants are various individuals and entities associated with the Plan.

Defendants Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., Lawrence A Bossidy, M. Anthony Burns, H. Laurence Fuller, Ellen V. Futter, William H. Gray, III, William B. Harrison, Jr., Helene L. Kaplan, Lee R. Raymond, John R. Stafford and Lloyd D. Ward ("Director Defendants") were members of the Board of Directors of JP Morgan Chase during all or part of the Class Period.  (Id. at ¶ 18.)  The Board of Directors of JP Morgan Chase has limited fiduciary responsibilities: (a) designation and removal of the Plan Administrator; (b) designation and removal of the Benefits Fiduciary Committee members; and (c) designation and removal of the Plan Investment Management Committee members.  (Id. at ¶ 11; Ex. H to Decl. of Jonathan Youngwood dated April 16, 2009 ("Youngwood Decl.") at § 13.4.)

Defendant Richard Donaldson Jr. was a Vice President of JP Morgan Chase and the Benefits Administrator at JP Morgan Chase.  According to the Complaint, Donaldson acted as a fiduciary with respect to the Plan.  (Id. at ¶ 17.)

Defendants John Does 1-30 are unknown members of the Benefits Fiduciary Committee during the Class Period, as well as others who allegedly acted as fiduciaries with respect to the Plan.  (Id. at ¶ 16.)

Individual defendants Ina R. Drew, Dina Dublon, Patrik L. Edsparr, John J. Farrell, Peter H. Kopp, Maria Elena Lagomasino, Blythe S. Master, Edward L. McGann, Marc J. Shapiro and John C. Wilmot, as members of the Plan Investment Management Committee during all or part of the Class Period, were named fiduciaries of the Plan and acted as fiduciaries with respect to the Plan.  The Plan Investment Management Committee is a named fiduciary of the Plan and acted as a fiduciary with respect to the Plan.  (Am. Compl. at ¶ 13; Ex. H to Youngwood Decl. at

§ 13.3 ("The Plan Investment Management Committee . . . shall be the named fiduciary with respect to the selection of the Investment Funds (other than the JP Morgan Chase Common Stock Fund) and the selection and appointment of investment manager(s) with respect to such Investment Funds under the Plan.").)  Plaintiffs assert liability against defendants Drew, Dublon, Edsparr, Farrell, Kopp, Lagomasino, Master, McGann, Shapiro and Wilmot for the time periods they served on the Plan Investment Management Committee or otherwise acted as fiduciaries with respect to the Plan.  (Am. Compl. at ¶ 14.)  The Plan Investment Management Committee and the Benefits Fiduciary Committee are collectively referred to as the "Committees."

    B.  <u>The Plan</u>

The JP Morgan Chase 401(k) Savings Plan[2] qualifies as an "employee pension benefit plan" as defined by 29 U.S.C. § 1002(2)(A).  (<u>Id</u>. ¶ 34.)  The Plan "provided for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account" and is thus an eligible individual account plan ("EIAP") within the meaning of 29 U.S.C. § 1002(34).  (<u>Id</u>. ¶ 35.)

The Plan allows participants to select from a number of different investment options, including JP Morgan Chase stock through the JPM Stock Fund (the "Stock Fund"), mutual funds, and common or collective trusts.  (<u>Id</u>. ¶ 36; Ex. H to Youngwood Decl. at §§ 7.6-7.7.) Although the Plan affords fiduciary discretion to add and remove certain of the investment funds as options (Ex. H to Youngwood Decl. at § 7.1), the Plan implies that the Stock Fund will be an investment option (<u>Id</u>. at § 7.3).  Specifically, the Plan states that "[s]ubject to compliance with any investment elections made by [p]articipants . . . up to 100 percent of the Trust may be invested in shares of Common Stock [of JP Morgan Chase]."  (<u>Id</u>.)

---

[2] JP Morgan Chase was formed by merger, on December 31, 2000, of the former J.P. Morgan & Co., Inc., and Chase Manhattan Bank.  The Plan is a continuation and successor to the Chase Manhattan Bank 401k plan.  As a result of the merger, the two deferred profit sharing plans were merged.  For simplicity's sake, when there is no relevant distinction for the purposes of this analysis, the Court refers to both Chase—the pre-merger entity—and the post-merger combined corporation as JP Morgan Chase and refers to the combined plans as the Plan.

C.  <u>This Action</u>

Plaintiffs maintain principally that the plan fiduciaries should have known that the common stock of Chase and JP Morgan Chase were not prudent investment options since they knew JP Morgan Chase had billions of dollars in undisclosed loss exposure to Enron.  (Am. Comp<u>l</u>. at ¶ 3.)  Specifically, plaintiffs allege that defendants engaged in a series of transactions known as "prepays," in which JP Morgan Chase provided Enron with billions of dollars in credit disguised as revenue from prepaid commodity trades.  (<u>Id</u>.)  These prepays were designed to and did cancel each other out without any product ever being delivered.  (<u>Id</u>.)  Plaintiffs contend these transactions were "disguised loans" that should have been accounted for as loans by Enron, but were not, in violation of fair disclosure and Generally Accepted Accounting Principles.  (<u>Id</u>.)  The failure to account for these transactions as liabilities distorted the public's view of Enron's debt, thereby misleading investors and analysts about Enron's financial health.  (<u>Id</u>. at ¶ 50(a)-(o).)  Essentially, plaintiffs allege that JP Morgan Chase assisted Enron in making deceitful accounting statements, which when later exposed caused the stock price of JP Morgan Chase to fall dramatically because it became clear that Enron would not be able to pay JP Morgan Chase the amount owed on the disguised loans.  (<u>Id</u>. at ¶ 50(a)-(o).)  In addition, plaintiffs allege that on numerous occasions during the Class Period, one of JP Morgan Chase's subsidiaries, JP Morgan Securities Incorporated., was systematically engaged in violations of the Securities Exchange Commission ("SEC") Regulation (Rule 101) which, once discovered, also contributed to the drop in JP Morgan Chase's stock price.  (<u>Id</u>. at ¶¶ 50.(r)-(s.); 78(e).)

Plaintiffs thus allege that the plan fiduciaries breached their fiduciary duties to the plan participants in various ways: (1) Count I alleges that defendants negligently permitted plan participants to purchase and hold shares of common stock of Chase and JP Morgan Chase when it was imprudent to do so; (2) Count II alleges that defendants negligently misrepresented and

failed to disclose material facts to plan participants in connection with the management of the Plan assets; and (3) Count III alleges that JP Morgan Chase and the director defendants failed to appoint appropriate fiduciaries, failed to properly monitor those fiduciaries, and failed to supply them with the information necessary to fulfill their duties as plan fiduciaries.[3]  (Id. at ¶ 2.)

As a result of these alleged breaches, plaintiffs contend that plan participants suffered substantial losses during the Class Period.  In addition, plaintiffs maintain that the plan participants have been deprived of the value of alternative prudent investments.

## II. DISCUSSION

A.  Motion for Judgment on the Pleadings Standard

In deciding a motion under Federal Rule of Civil Procedure 12(c), courts apply the same standard that applies on a motion to dismiss under Rule 12(b)(6).  Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).  Accordingly, a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, -- U.S.--, 129 S. Ct. 1937, 1949 (2009); Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006).  A complaint should be dismissed if it fails to set forth "enough facts to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 129 S. Ct. at 1949.  Thus, a complaint that

---

[3] Although plaintiffs have made only three claims, the third claim is, in substance, three separate claims. Accordingly, plaintiffs' third claim will be analyzed as three distinct claims.

"offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).

   B.  Count I:  Defendants Allegedly Offered JP Morgan Chase Stock as an Investment
       Option When They Should Have Known that It Was an Imprudent Investment

Count I alleges that each of the defendants breached their ERISA fiduciary duties by offering Chase or JP Morgan Chase stock as an investment option to plan participants during the Class Period even though the defendants should have known that the stock was an imprudent investment option.  (Am. Compl. at ¶ 49.)  Analyzing that claim requires a brief overview of the scope of duties ERISA imposes on fiduciaries.

An employer creates an ERISA plan with a written instrument called a "plan agreement," which describes the plan and nominates fiduciaries to make discretionary decisions on behalf of the plan.  See 29 U.S.C. § 1102.  ERISA imposes fiduciary duties on those who have "discretionary authority" to administer or manage ERISA plans.  Id. § 1002(21)(A).  That includes, of course, individuals named as fiduciaries in the plan agreement.  Such "named fiduciaries" are given specific responsibilities and must carry out those responsibilities in accordance with the fiduciary duties that ERISA imposes.  In addition to named fiduciaries, ERISA imposes fiduciary duties on those who have "discretionary authority" to administer or manage ERISA plans.  Id. § 1002(21)(A).  These fiduciaries, in addition to the named fiduciaries, are also given specific responsibilities that they must carry out in accordance with the fiduciary duties that ERISA imposes.

In particular, an ERISA fiduciary has a duty of loyalty requiring him to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."  Id. § 1104(a)(1).  An ERISA fiduciary also has a duty of prudence, which means that he must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of

8

an enterprise of a like character and with like aims."  Id. § 1104(a)(1)(B).  In addition, an ERISA

fiduciary must act "in accordance with the documents and instruments governing the plan insofar

as such documents and instruments are consistent with" certain ERISA provisions.  Id. §

104(a)(1)(D).

While fiduciaries—specifically the Investment Management Committee—are responsible

for selecting investment options for plan participants, ERISA requires fiduciaries to manage fund

assets "by diversifying the investments of the plan so as to minimize the risk of large losses,"

§§ 1104(a)(1)(C), although the diversification requirement does not apply to a plan that qualifies

as an "eligible individual account plan" ("EIAP"), id. §§ 1104(a), 1107(d)(3)(A).  For EIAPs—

such as the Plans here—"the diversification requirement . . . and the prudence requirement (only

to the extent that it requires diversification) . . . is not violated by acquisition or holding of

qualifying employer real property or qualifying employer securities."  Id. § 1104(a)(2).

When employers "adopt, modify, or terminate" ERISA plans, "they do not act as

fiduciaries, but are analogous to the settlors of a trust."  Hughes Aircraft Co. v. Jacobson, 525

U.S. 432 (1999); In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 U.S. Dist. LEXIS 78055,

at *20 (S.D.N.Y. Aug. 31, 2009).  Just as settlors may design trusts as they see fit, employers,

acting as plan sponsors, have wide latitude in designing ERISA plans.  Cf. Shaw v. Delta Air

Lines, Inc., 463 U.S. 85, 91 (1983) ("ERISA does not mandate that employers provide any

particular benefits . . . .").  Plan sponsors, therefore, have no fiduciary duties—and thus face no

liability for breach of fiduciary duty—when they "adopt, modify, or terminate" ERISA plans.

Hughes Aircraft, 525 U.S. at 443; Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *20.

Here, Count I alleges that defendants breached their duties of prudence and loyalty by

offering JP Morgan Chase stock as investment options to plan participants during the Class

Period.  (Am. Compl. at ¶¶ 49-51.)  It was disloyal and imprudent, plaintiffs maintain, for

9

defendants to continue to offer such stock when defendants should have known that JP Morgan Chase and Chase stock were extremely risky investments.  (Id.)

The "threshold question" in "every case charging breach of ERISA fiduciary duty" is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000). Whether an individual was "acting as a fiduciary" depends on whether the individual had discretion over the plan function in question.  See 29 U.S.C. § 1002(21)(A); Pegram, 530 U.S. at 225-26; Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002).

The Plan here did not require the Company Stock Fund to be offered.  (Am. Compl. at ¶ 46; Ex. H to Youngwood Decl. at § 7.1(a).) That the Stock Fund could be offered is not proof that it had to be offered.  Thus, it is clear that at least the Committees had discretion over the Plan and were thus acting as fiduciaries with respect to the Plan insofar as they selected JP Morgan Chase stock as an investment option.  Although plaintiffs allege that the other defendants were also fiduciaries with respect to the Plan, the Court disagrees.  JP Morgan Chase was not a fiduciary because plaintiffs have alleged that it was a plan sponsor and as a result, it has no fiduciary duties to plan participants.  Hughes Aircraft, 525 U.S. at 443; Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *20.  Moreover, plaintiffs have not alleged sufficient facts to create a plausible claim that JP Morgan Chase was a "de facto" plan fiduciary, nor have the plaintiffs sufficiently alleged that the director defendants and other individual defendants had discretion over the decision to offer the JP Morgan Chase stock as an investment option to plan participants.  Iqbal, 129 S. Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"; a complaint that "offers 'labels and conclusions' or "'a formulaic recitation of the elements of a cause of action

will not do.'")  (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>In re</u> <u>Lehman Bros. Sec. & ERISA Litig.</u>, No. 09 Civ. 2017, 2010 U.S. Dist. LEXIS 8707, at *11 (S.D.N.Y. Feb. 3, 2010).  Accordingly, the only defendants whom plaintiffs have properly alleged were fiduciaries with respect to the Plan are the Committee Defendants who are named fiduciaries under the Plan.

    This Court finds that plaintiffs have not set forth a plausible claim that it was imprudent to offer JP Morgan Chase and Chase stock to plan participants.  Accordingly, defendants are entitled to judgment on the pleadings on Count I for the following reasons:

### 1. *Plaintiffs Have Failed To State a Plausible Claim that Offering JP Morgan Stock as an Investment Option Was Imprudent*

    In <u>Moench v. Robertson</u>, 62 F.3d 553, 571-72 (3d Cir. 1995), the Third Circuit set forth a presumption of prudence for an employee stock ownership plan ("ESOP") investment in employer stock, and in <u>Edgar v. Avaya, Inc</u>., 503 F.3d 340, 347, the Third Circuit extended the presumption to cover EIAPs, <u>id</u>.; <u>see also</u> <u>Citigroup ERISA Litig</u>., 2009 U.S. Dist. LEXIS 78055, at *37 n.5 ("Much of the caselaw in this area addresses ESOPs in particularly, not just EIAPs in general.  Nevertheless, nearly all of the points made about ESOPs apply equally to EIAPs."). <u>Moench</u> held that, because of "the purpose behind ERISA and the nature of ESOPs themselves," an ESOP fiduciary that decided to invest a fund's assets in employer stock was "entitled to a presumption that it acted consistently with ERISA by virtue of that decision."  62 F.3d at 571.  A plaintiff could "overcome that presumption," <u>Moench</u> explained, only "by establishing that the fiduciary abused its discretion by investing in employer securities."  <u>Id</u>; <u>see also</u> <u>Citigroup</u> <u>ERISA Litig</u>., 2009 U.S. Dist. LEXIS 78055, at *50.

    Plaintiffs argue the <u>Moench</u> presumption of prudence applies only when a fiduciary is <u>required</u> by the terms of a plan to invest in company stock.  The Court disagrees.  As other courts that have addressed the issue have found, the presumption of prudence "applies to any

allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock." Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 254 (5th Cir. 2008); see also In re Dell, Inc. ERISA Litig., 563 F. Supp. 2d 681, 691-692 (W.D. Tex. 2008)

This Court's decision in Citigroup ERISA Litigation is not to the contrary.  In that case, the plan in fact required the employer to offer its own stock under the plain language of the plan agreement.  Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *23-24.  The Court wrote that the Moench presumption would apply even if the plan had merely "encouraged investment" in the employer stock rather than "required" it.  Id. at 49-50.  The Court now finds that the presumption "applies to any allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock," Kirschbaum, 526 F.3d at 254, regardless of whether the plan "requires, encourages, or permits investment so long as the investment is an EIAP or ESOP," In re Dell, Inc. ERISA Litig., 563 F. Supp. 2d at 691-692 (quoting Kirschbaum, 526 F.3d at 254).

ERISA expresses a strong preference for employee ownership in the context of ESOPs and EIAPs.  See Avaya, 503 F.3d at 346; Moench, 62 F.3d at 568.  Accordingly, while this Court declines "to adopt a per se rule that the decision of an ESOP [or EIAP] fiduciary to invest in employer securities is not subject to judicial review," the presumption of reasonableness adopted by Moench and extended to EIAPs by Avaya does not require a plan agreement to mandate or state a preference for such investments.  Here, since defendants had discretion to eliminate the offering of Stock Fund but the Plan implied that participants would be allowed to invest up to 100 percent of their funds in the Stock Fund, the Moench presumption most certainly applies. See  Avaya, 503 F.3d at 347; Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *50.

In addition, plaintiffs argue that the Moench presumption should not apply on a motion to dismiss, and accordingly, it should not apply on a motion for judgment on the pleadings either. That argument was rejected by this Court in its decision in Citigroup ERISA Litigation., 2009

U.S. Dist. LEXIS 78055, at *51, and it was rejected in subsequent decisions in this district, see

Lehman Bros., 2010 U.S. Dist. LEXIS 8707; Gearren v. McGraw-Hill Cos., No. 08 Civ. 7890,

2010 U.S. Dist. LEXIS 12041, at *39-40 (S.D.N.Y. Feb. 10, 2010).  It is rejected here as well.

> ### 2. *The Allegations in the Complaint Do Not Establish a Plausible Claim That Overcomes the Presumption of Prudence*

A plaintiff may overcome the Moench presumption of prudence "by establishing that the

fiduciary abused its discretion by investing in employer securities."  Moench, 62 F.3d at 571.

Thus, to survive a motion to dismiss, a complaint must contain facts that, if true, would make it

plausible that a fiduciary could not reasonably have believed that its chosen course of action

regarding the offering of employer stock—whether the decision to do so was made through the

exercise of its discretion or pursuant to a plan mandate—"was in keeping with the settlor's

expectations of how a prudent trustee would operate."  Avaya, 503 F.3d at 348; see also

Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *52.  To that end, "the complaint may

contain allegations showing that, owing to circumstances not known to the settlor and not

anticipated by him, investing in employer securities would defeat or substantially impair the

accomplishment of the purposes of the trust."  Id.

In Moench, the court suggested that the plaintiff would be able to overcome the

presumption by proving that the price of employer stock had suffered a "precipitous decline" and

that the plan fiduciaries had "knowledge of its impending collapse."  Moench, 62 F.3d at 572.  A

"precipitous decline" in stock price meant that the stock lost ninety-eight percent of its value

over a two-year period, resulting in a decline in price from $18.25 to less than $0.25 per share.

Id. at 557.  An "impending collapse" meant that "federal regulators informed the company's

Board of Directors that they had concerns about the company's financial condition and had

uncovered various regulatory violations; the Federal Deposit Insurance Corporation eventually

took over control of one of the company's subsidiaries; and, ultimately, the company filed for

Chapter 11 bankruptcy."  Avaya, 503 F.3d at 348 (summarizing Moench, 62 F.3d at 557); see also Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *53 (same).

While the allegations in Moench were, if substantiated, enough to overcome the presumption of prudence, other courts have provided examples of allegations that were not enough to overcome the presumption.  In Avaya, the plaintiff alleged that the defendants made questionable business decisions that resulted in a drop in the company's stock price from $10.69 to $8.01 per share upon the relevant earnings announcement.  Avaya, 503 F.3d at 348.  However, the court found that this did not create "the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the Avaya Stock Fund as an investment option." Id.

In Kirschbaum, the Fifth Circuit addressed a company whose stock had fallen forty percent.  526 F.3d. at 255-57.  That was not enough, the Kirschbaum court found, to show that the company's "viability as a going concern was ever threatened" or that the company's "stock was in danger of becoming essentially worthless."  Id.  Although that court found that the Moench presumption is not limited in application to the case of "investments in stock of a company that is about to collapse," the court emphasized that the Moench presumption is, in general, a "substantial shield" for plan fiduciaries.  Id. at 256.

Here, plaintiffs allege that JP Morgan Chase had billions of dollars in undisclosed contingent liabilities, including an undisclosed loss exposure of approximately $2.6 billion in connection with JP Morgan Chase's dealings with Enron Corp.  (Am. Compl. at ¶ 3.)  Plaintiffs further maintain that JP Morgan Chase's reputation in the banking industry was entirely in peril due to these undisclosed liabilities and certain prepay transactions in which JP Morgan Chase allegedly assisted Enron in committing accounting fraud, or at the very least was aware that its services enabled Enron to commit accounting fraud.  (Id.)  Plaintiffs allege that when Enron

collapsed JP Morgan Chase suffered losses totaling billions, losses that plan participants were unaware JP Morgan Chase could face.  (Id.)  Indeed, the price of JP Morgan Chase's stock fell from approximately $57.00 per share in April 1999, to approximately $17.00 per share in September 2002—approximately a seventy percent drop.  (Ex. D to Youngwood Decl.)  The stock did rebound, leveling off at approximately $26.00 per share at the end of the Class Period, for a drop of approximately fifty-five percent during the Class Period.

At best, these allegations might support the position that JP Morgan Chase made poor choices with respect to its business strategies, which subsequently caused substantial losses to the company.  However, these allegations do not suggest "the type of dire situation" that would have caused the plan fiduciary defendants to believe continuing to offer the Stock Fund as an investment option was no longer "keeping with the settlor's expectations of how a prudent trustee would operate."  Avaya, 503 F.3d at 348; see also Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *57.  A fifty-five percent decline in stock price, even if significant, is not itself enough to overcome the Moench presumption.  See Kirschbaum, 526 F.3d at 256 (forty percent drop in stock price insufficient); Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1098 (9th Cir. 2004) (seventy-five percent drop insufficient); Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir.1995) (eighty percent drop insufficient); Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *57 (fifty-two percent drop insufficient); In re Duke Energy ERISA Litig., 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003) (fifty-five percent drop insufficient); Crowley v. Corning, Inc., 234 F. Supp. 2d 222, 227 (W.D.N.Y. 2002) (eighty percent drop insufficient).

Furthermore, the allegations in this action provide "no indication" that, during the class period, JP Morgan's "viability as a going concern was ever threatened."  Kirschbaum, 526 F.3d at 255.  Indeed, while JP Morgan Chase's losses were significant, the stock still retained significant value throughout the Class Period.  (Ex. D to Youngwood Decl.)  Thus, the

allegations in the amended complaint do not set forth a plausible claim that JP Morgan Chase's viability was ever threatened and therefore do not state a plausible claim that reasonable fiduciaries would have considered themselves bound to divest the Plans of JP Morgan Chase and Chase stock during the Class Period.  Accordingly, defendants are entitled to judgment on the pleadings on Count I.

    C.   <u>Count II:  All Defendants, Except JP Morgan Investment Services, Allegedly Misrepresented and Failed To Disclose Material Information To Plan Participants</u>

Plaintiffs' amended complaint alleges that all defendants except JP Morgan Investment Services negligently misrepresented and failed to disclose material information to plan participants in violation of defendants' fiduciary duties under ERISA.  Specifically, plaintiffs allege that defendants "issued one or more summary plan descriptions" which "expressly incorporated by reference documents filed by [JP Morgan Chase] with the SEC under the Federal securities laws." (Am. Compl. at ¶ 77.)  Plaintiffs maintain that the July 2003 plan description expressly incorporated by reference JP Morgan Chase's most recent annual 10-K report and its quarterly reports filed with the SEC as required by law.  (<u>Id.</u>)  Plaintiffs contend that each of the summary plan descriptions provided to plan participants during the Class Period "failed to disclose to plan participants material information" regarding JP Morgan Chase's dealings with Enron, "which was necessary to allow the plan participants to make informed judgments concerning their retirement options," and that the information JP Morgan Chase did disclose to plan participants was materially misleading.  (<u>Id.</u> at ¶ 78.)  In addition, plaintiffs allege that JP Morgan Chase failed to disclose the fact that one of its subsidiaries, J.P. Morgan Securities Incorporated, was systematically engaged in violations of SEC Regulations that, when discovered, contributed to the drop in JP Morgan Chase's stock price.  (<u>Id</u>. at ¶ 78(e).)

Count II alleges: first, that defendants breached their fiduciary duties through their silence.  That is, plaintiffs maintain that defendants should have known of the financial trouble

that would be caused by JP Morgan Chase's dealings with Enron and that their failure to disclose this information harmed plan participants. (Id.)  Second, when defendants did communicate to plan participants, they "negligently made material misrepresentations."  (Id. at ¶ 79.)

### 1. Defendants Had No Affirmative Duty To Disclose Non-public Information About JP Morgan Chase's Financial Condition

Assuming that the defendants had a fiduciary duty to communicate some information to plan participants, no defendant had an affirmative duty to disclose non-public financial information regarding JP Morgan Chase and its stock.

As this Court found in Citigroup ERISA Litigation, the caselaw is clear that if an ERISA fiduciary communicates information to plan participants, the fiduciary must be truthful. Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *62 (citing Varity Corp. v. Howe, 516 U.S. 489, 506 (1996)); see also Avaya, 503 F.3d at 350 ("It is well-established that an ERISA fiduciary may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed."  (quotation omitted)).  But the Second Circuit has not ruled directly on whether an ERISA fiduciary has an affirmative duty to inform plan participants about non-public corporate developments that might affect the value of employer stock, and if so, what degree of disclosure is required.  In a different context, the Second Circuit has read ERISA's disclosure requirements narrowly, finding that it was "inappropriate to infer an unlimited disclosure obligation on the basis of general provisions that say nothing about disclosure."  Board of Trustees of CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 147 (2d Cir. 1997); see also Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, *62-69 (finding that the defendants did not have an affirmative duty to convey financial information about Citigroup and its financial exposure resulting from its investments in subprime mortgages).  That finding comports with the conclusions other courts have reached.  See e.g., Avaya, 503 F.3d at 350-51; Meinhardt v. Unisys Corp., 74 F.3d 420, 443 (3d Cir. 1996)).

There are important similarities between the claims rejected in Weinstein and Citigroup ERISA Litigation, and the disclosure claim asserted by plaintiffs in this action.  Here, ERISA provides a "comprehensive set of 'reporting and disclosure' requirements" governing what defendants were required to disclose to plan participants.  Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995) (citing 29 U.S.C. §§ 1021-31).  The compliance guidelines do not include the information sought by plaintiffs here, and plaintiffs point to no ERISA provision requiring that fiduciaries disclose non-public information bearing on an employer's financial condition.

Rather, like the plan participants in Weinstein and Citigroup ERISA Litigation, plaintiffs claim that defendants were required to disclose information about JP Morgan Chase's investments pursuant to their general fiduciary duties of loyalty and prudence.  That theory has been considered and rejected by Weinstein and this Court's decision Citigroup ERISA Litigation.  Weinstein, 107 F.3d at 147; Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055, at *66.  Accordingly, defendants' motion for judgment on the pleadings must be granted on plaintiffs' failure-to-disclose claim insofar as plaintiffs allege that defendants had an affirmative duty to convey non-public financial information about JP Morgan Chase to plan participants.

### 2. *Plaintiffs' Amended Complaint Fails To Allege What Statements Defendants Made That Were Materially Misleading*

Second, plaintiffs allege that, regardless of whether or not the defendants had an affirmative duty to disclose information about JP Morgan Chase's financial condition, they volunteered misleading information about the financial health of the company, thereby violating their fiduciary duty to speak truthfully to plan participants.  That claim appears to rest entirely upon alleged misrepresentations made in JP Morgan Chase's SEC filings since plaintiffs have failed to point to anything in the summary plan description or other statements made by defendants that are purportedly materially misleading.

Plaintiffs contend the Class Period is from April 1, 1999 through January 2, 2003.  (Am. Compl. at ¶ 1; Pls.' Mem. of Law in Opp. at 17.)  However, much of Count II is based on alleged misrepresentations that were contained in JP Morgan Chase's July 2003 summary plan description, which was distributed more than six months after the close of the Class Period. However, plaintiffs argue that their claim rests on other summary plan descriptions that were issued during the class period, and that they were focusing on the July 2003 summary merely as an example.  (Id.)[4]

Although plaintiffs clearly make reference to summary plan descriptions issued within the Class Period, the fact remains that the amended complaint fails to identify any language that is purportedly materially misleading.  (Id.)  The one specific document that the complaint does identify—the 2003 summary plan description—also fails because it was issued more than six months after the close of the Class Period.  When plaintiffs decided to amend the end of the Class Period to January 2, 2003, they implicitly made the July 2003 summary plan irrelevant to their allegations in Count II.  Even after defendants disputed the relevancy of the 2003 summary plan description in light of the shortened Class Period, plaintiffs once again failed to reference any language in any other summary plan description in their opposition papers on this motion. (See Pl.'s Mem. of Law in Opp. at 18-20.)

---

[4] Indeed, plaintiffs' complaint reads as follows:

> As required by ERISA, Defendants issued <u>one or more</u> Summary Plan Descriptions ("SPD"), <u>each of which</u> expressly incorporated by reference documents filed by JPMC with the SEC under Federal Securities Laws.  <u>Among</u> the SPDs provided to Plan Participants during the Class Period was the SPD dated July 2003, which . . . expressly incorporated by reference the most recent annual report of [JP Morgan Chase] on Form 10-K and the quarterly and other reports of [JP Morgan Chase] filed with the SEC required by other provisions of the Securities Exchange Act of 1934.

> <u>Each of the SPDs</u> provided to Plan Participants during the Class Period, both in the text of the SPD itself and in the SEC filings which were expressly incorporated by reference into the SPDs, failed to disclose to Plan Participants material information which was necessary to allow the Plan Participants to make informed judgments concerning their retirement investment options.

(Am. Compl. at ¶¶ 77-78 (emphasis added).)

Therefore, this Court need not address the issue of whether the SEC filings are incorporated into the plan summaries because we find that even if a summary plan description did incorporate the SEC filings by reference, plaintiffs have failed to point to any language in any summary plan description or any incorporated SEC filing made within the amended Class Period that is materially misleading.  (See Pl.'s Mem. of Law in Opp. at 18-20.)  Accordingly, plaintiffs have failed to plead factual allegations sufficient to raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555; see also Iqbal, 129 S.Ct. at 1950 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.")

### 3. Defendants Were Not Acting as Fiduciaries When They Made Statements About JP Morgan Chase's Financial Condition

Even if plaintiffs could point to some materially misleading language in any SEC filing that was incorporated into the summary plan description, plaintiffs have not sufficiently pled that those statements were made in an ERISA fiduciary capacity rather than a corporate capacity.

ERISA's duty to speak truthfully applies only to those who are, in fact, ERISA fiduciaries.  Emerging caselaw makes clear that those "who prepare SEC filings do not become ERISA fiduciaries through those acts" and, "consequently, do not violate ERISA if the filings contain misrepresentations."  Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78288, at *72 (quoting WorldCom, 263 F. Supp. 2d at 767); see also Lehman Bros., 2010 U.S. Dist. LEXIS 8707, at *12-13; Gearren, 2010 U.S. Dist. LEXIS 12041, at *48-49.  SEC filings are "documents that directors must execute to comply with a corporation's obligations under federal securities laws," Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78288, at *72 (quoting WorldCom, 263 F. Supp. 2d at 767), and do not, standing alone, have anything to do with ERISA.  Thus, if JP Morgan Chase filed "materially false and misleading" 8-Ks, 10-Qs, and 10-Ks with the knowledge that those filings were false, JP Morgan Chase may have run afoul of the federal securities laws, but it did not violate ERISA by doing so.  Citigroup ERISA Litig., 2009 U.S.

Dist. LEXIS 78288, at *72-73 (citing <u>WorldCom</u>, 263 F. Supp. 2d at 767); <u>see also</u> <u>Gearren</u>, 2010 U.S. Dist. LEXIS 12041, at *48-49.

In addition, plaintiffs have failed to allege which defendants, if any, who prepared the purportedly misleading SEC filings were acting as fiduciaries—i.e. performing fiduciary functions—when making those statements.  <u>Citigroup ERISA Litig.</u>, 2009 U.S. Dist. LEXIS 78288, at *72 (quoting <u>WorldCom</u>, 263 F. Supp. 2d at 767).  Indeed, other than the 2003 SEC filings, plaintiffs do not allege which SEC filings were materially misleading, much less the fact that the preparers of those documents were also acting in a fiduciary capacity with respect to the Plan.  Accordingly, plaintiffs have failed to plead factual allegations sufficient to raise a right to relief above the speculative level.  <u>Twombly</u>, 550 U.S. at 555; <u>see also</u> <u>Iqbal</u>, 129 S.Ct. at 1950.[5]

D.  <u>Count III:  JP Morgan Chase and the Director Defendants Allegedly Failed To Appoint Fiduciaries with the Knowledge and Experience Necessary To Manage Plan Assets</u>

Count III is "derivative" of Counts I and II since it alleges that JP Morgan Chase and the director defendants failed to appoint fiduciaries with the knowledge, skill, and expertise necessary to manage the Plan assets.  (Am. Compl. at ¶ 86(c).)  Plaintiffs offer nothing to support that conclusory assertion which is itself insufficient to state a plausible claim to relief.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949 (a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting <u>Twombly</u>, 550 U.S. at 555)).  Since

---

[5] Lastly, even assuming that defendants were performing fiduciary functions under the <u>Varity</u> "two-hat" approach, <u>see</u> <u>Citigroup ERISA Litig.</u>, 2009 U.S. Dist. LEXIS 78288, at *73, as a matter of law, the alleged misstatements contained in the SEC filings purportedly incorporated into the summary plans descriptions cannot be <u>material</u> misstatements.  As the Second Circuit stated when reviewing this Court's decision in the related securities fraud case, "changing the accounting treatment of approximately 0.3% of [JP Morgan Chase's] total assets from trades to loans would not have been material to investors."  <u>ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.</u>, 553 F.3d 187, 204 (2d Cir. 2009) ("Although $2 billion in prepay transactions may sound staggering, the number must be placed in context—reclassifying $2 billion out of one category of trading assets (derivative receivables) totaling $76 billion into another category (loan assets) totaling $212 billion does not alter [JP Morgan Chase's] total assets of $715 billion.  Moreover, the underlying assets in either classification carry some default risk.  As the district court wrote about this same information, "[c]hanging the accounting treatment of approximately 0.3% of JPM Chase's total assets from trades to loans would not have been material to investors.") (citing <u>In re JPMorgan Chase Sec. Litig.</u>, 363 F. Supp. 2d 595, 631 (S.D.N.Y. 2005)).

plaintiffs have failed to support Count III with a single well-pleaded factual allegation,

defendants are entitled to judgment on the pleadings on plaintiffs' third claim.

     E.   <u>Count IV:  JP Morgan Chase and the Director Defendants Allegedly Failed To Monitor Plan Fiduciaries</u>

Count IV alleges that the director defendants failed to monitor plan fiduciaries that they

appointed—the members of the Plan Investment Management Committee and the Benefits

Fiduciary Committee.  (Am. Compl. at ¶ 86(a).)  Plaintiffs contend that since the Plan suffered

losses as a result of the Committees' purportedly imprudent actions and inaction with respect to

the offering of JP Morgan Chase stock, the director defendants must have breached their duty to

monitor the Committees when they failed to remove the committee members.  (<u>Id</u>.)

Several courts have held that the authority to appoint ERISA fiduciaries brings with it a

duty to monitor the appointees.  <u>See</u> <u>In re Polaroid ERISA Litig.</u>, 362 F. Supp. 2d 461, 477

(S.D.N.Y. 2005) (collecting cases and noting that an "appointing fiduciary's duty to monitor his

appointees is well-established").  But even if the duty to monitor exists, plaintiffs have failed to

adequately plead a breach of the duty to monitor here because the claim rests entirely on

plaintiffs' allegation that the decision to offer JP Morgan Chase stock as an investment option to

plan participants was imprudent.  As discussed above, however, the decision to offer JP Morgan

Chase stock was presumptively prudent and defendants have not pled sufficient facts to

overcome that presumption.  Thus, plaintiffs have failed to plead a breach of the duty to monitor

because plaintiffs have failed to allege an instance of misconduct that the director defendants

failed to detect.  <u>Citigroup ERISA Litig.</u>, 2009 U.S. Dist. LEXIS 78055, at *79; <u>see also</u> <u>Avaya</u>,

503 F.3d at 349 n.15 ("[Plaintiff] summarily argues in her brief on appeal that because the

District Court improperly dismissed [the] duty of prudence claim, it should not have dismissed

[the] claims for breach of the duty of loyalty, breach of the duty to monitor fiduciaries, and co-

fiduciary liability. Because we affirm the District Court's dismissal of Edgar's duty of prudence claim, there is no basis for us to disturb the District Court's dismissal of these other claims.")

F. Count V: JP Morgan Chase and the Director Defendants Allegedly Failed To Provide Sufficient Information For Plan Fiduciaries To Perform Their Duties

Count V is similarly "derivative" of Counts I and II since it alleges that JP Morgan Chase and the director defendants failed to provide sufficient information to plan fiduciaries in order to enable them to perform their duties adequately. (Am. Compl. at ¶ 86(d).) Again, plaintiffs' conclusory assertion is precisely the type that is impermissible pursuant to the Supreme Court's decisions in Twombly and Iqbal. Because plaintiffs have failed to plead factual allegations sufficient to raise a right to relief above the speculative level, Twombly, 550 U.S. at 555 (2007); see also Iqbal, 129 S.Ct. at 1950, defendants are entitled to judgment on the pleadings on plaintiffs' fifth claim.

**III. CONCLUSION**

For the reasons set forth above, none of plaintiffs' allegations states a claim upon which relief can be granted. Accordingly, defendants' motion for judgment on the pleadings is granted and the Clerk of Court is directed to enter judgment for defendants.

Dated: New York, New York
       March 31, 2010

SO ORDERED:

Sidney H. Stein U.S.D.J